Robert ROLEN, Appellant,

v.

BURROUGHS WELLCOME
CO., Appellee.

No. 10–92–299–CV.

Court of Appeals of Texas,
Waco.

June 16, 1993.

Rehearing Denied July 28, 1993.

Mickey C. Shyrock, Joan G. Quinters, The Law Offices of Mickey C. Shyrock, Dallas, for appellant.

Walker C. Friedman, Michael T. Cooke, Friedman, Young & Suder, Fort Worth, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

### OPINION

CUMMINGS, Justice.

Robert Rolen appeals the granting of a summary judgment in favor of Burroughs Wellcome Company. On appeal, Rolen raises nine points of error regarding the sufficiency of Burroughs Wellcome's affidavits and the adequacy of the summary judgment evidence.

On April 16, 1988, Rolen, who was 80 years of age, was examined by his physician, William Kinzie, and received a prescription for allopurinol. Burroughs Wellcome markets allopurinol under the brand name Zyloprim. Rolen took the medication as directed by Dr. Kinzie. On May 4, 1988, Rolen returned to Dr. Kinzie's office and was diagnosed as suffering from the flu. The following day, Rolen was admitted to the Baylor Medical Center emergency room. At this time, Dr. Kinzie diagnosed him with Stevens–Johnson syndrome and other physiological effects associated with an allergic reaction to allopurinol.

Rolen sued Dr. Kinzie, Baylor Medical Center, and Burroughs Wellcome. Baylor was non-suited, and Dr. Kinzie settled out of court. Rolen asserts that Burroughs Wellcome failed to adequately or properly warn either Rolen or Dr. Kinzie of the dangerous propensities of allopurinol and that this deficiency and the drug itself constituted a breach of the implied warranty of merchantability. The trial court granted Burroughs Wellcome's motion for a summary judgment.

The standard of review in a summary judgment case is whether the movant met his burden in establishing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a. The appellate court is no longer required to search through the record to decide if a genuine issue of material fact exists: the appellate court need only review that evidence considered by the court as specifically stated in the written motion or answer. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 677 (Tex.1979). The evidence is viewed in a light most favorable to the non-movant. All doubts as to the existence of a genuine issue of material fact are resolved against the movant. *Great American Reserve Ins. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). A defendant who moves for summary judgment without asserting an affirmative defense must disprove as a matter of law at least one element essential to the plaintiff's cause of action. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991).

We first address Rolen's complaint about the sufficiency of Burroughs Wellcome's affidavits. This court has held that "no particular terminology is required to render a document an affidavit because it is the substance and not the form of an affidavit which is significant." *Acme Brick v. Temple Assoc., Inc.*, 816 S.W.2d 440, 441 (Tex.App.—Waco 1991, writ denied). The affidavits in this case are of the same construction as those approved in *Acme Brick*: "BEFORE ME, me the undersigned authority, on this day personally appeared [name], known to me to be the person whose name is subscribed hereto and upon oath deposes and states ...." *See id.* at 444 (Thomas, C.J., dissenting).[1] Accordingly, we hold that the affidavits of Burroughs Wellcome, which were relied on

---

1. In his dissent, Chief Justice Thomas considered the affidavit in *Acme Brick* insufficient because it did not contain the signature of the affiant within the body of the affidavit, a problem not present in the instant case.

by the trial court in support of its summary judgment, were sufficient.

■ In a failure-to-warn case, the plaintiff must show that the warning was defective and that this failure to warn was the producing cause of the plaintiff's injury. *Technical Chemical Co. v. Jacobs*, 480 S.W.2d 602, 605 (Tex.1972). Food and Drug Administration approval of the packaging insert is not sufficient evidence, by itself, of the adequacy of the warning. *Bristol–Myers Co. v. Gonzales*, 561 S.W.2d 801, 804 (Tex.1978). In the instant case, the warning details the potential dangers and results of an improper prescription.[2] Burroughs Wellcome cites a plethora of federal cases for the proposition that, if a warning specifically mentions the circumstances complained of, the warning is adequate as a matter of law. *See, e.g., Pierluisi v. E.R. Squibb & Sons, Inc.*, 440 F.Supp. 691 (D.P.R.1977); *Stone v. Smith, Kline & French Lab.*, 731 F.2d 1575 (11th Cir.1984).

This case is distinguishable from the recent case of *Jordan v. Geigy Pharmaceuticals*, 848 S.W.2d 176 (Tex.App.—Fort Worth 1992, n.w.h.). In *Jordan*, the court found a question of material fact existed concerning the specificity of the drug manufacturer's warning, which did not include the danger complained of; and, therefore, remanded the case for trial on the adequacy of the warning. In the present case, the warning clearly included the reaction suffered by Rolen.

■ The "learned intermediary doctrine" is distantly related to the tort concept of "superseding cause." Although the doctrine has never been recognized by the Texas Supreme Court, it has been adopted by intermediate appellate courts. *See Khan v. Velsicol*, 711 S.W.2d 310, 313 (Tex. App.—Dallas 1986, writ ref'd n.r.e.). It has been limited to the physician-patient relationship involving prescription drugs. *Id.* The unique nature of this relationship prevents application to other areas. Under the doctrine, the manufacturer has a duty to adequately warn the physician; the physician then chooses the type and quantity of drug to be prescribed to an individual patient. The physician must use his comprehensive training and experience in conjunction with his knowledge of the individual patient in determining the suitability of a medication. The physician assumes the duty to warn the patient of dangers associated with a particular prescribed drug. *Stewart v. Janssen Pharmaceutica, Inc.*, 780 S.W.2d 910, 911 (Tex.App.—El Paso 1989, writ denied); *see also Gravis v. Parke–Davis & Co.*, 502 S.W.2d 863 (Tex. App.—Corpus Christi 1973, writ ref'd n.r.e.).

Even artful guile cannot save Rolen's assertions from standing for the proposition that a drug manufacturer should effectively become the insurer for every patient to whom the drug is prescribed, regardless of the actions of the prescribing physician. The physician's professional knowledge and judgment in prescribing a medication would

---

**2.** The Physician's Desk Reference and the package insert contained the following:

**INDICATIONS AND USAGE:** THIS IS NOT AN INNOCUOUS DRUG. IT IS NOT RECOMMENDED FOR THE TREATMENT OF ASYMPTOMATIC HYPERURICEMIA.

. . . .

**WARNINGS:** ZYLOPRIM (ALLOPURINOL) SHOULD BE DISCONTINUED AT THE FIRST APPEARANCE OF SKIN RASH OR OTHER SIGNS WHICH MAY INDICATE AN ALLERGIC REACTION. In some instances a skin rash may be followed by more severe hypersensitivity reaction such as exfoliative urticarial and purpuric lesions as well as Stevens–Johnson syndrome (erythema multiforme exudativum), and/or generalized vasculitis, irreversible hepatotoxicity and on rare occasions death.

. . . .

**PRECAUTIONS:**

. . . .

Patients with decreased renal function require lower doses of Zyloprim than those with normal renal function. Lower than recommended doses should be used to initiate therapy in any patient with decreased renal function and they should be observed closely during the early stages of Zyloprim administration. . . .

Further detailed instructions, including dosage requirements and specific instructions regarding patients with other problems, were contained in the "WARNINGS" and "PRECAUTIONS" sections in both the PDR and the package insert.

cease to be relevant. It is the physician's province to prescribe drugs; if certain drugs were safe for general use, no prescription would be needed. Without the learned intermediary doctrine, the availability of a particular pharmaceutical product would depend on whether that drug was suitable and safe for use by the general public. This is plainly against clear logic, the public's best interest, and holdings of Texas courts for over twenty years. *See Gravis*, 502 S.W.2d at 870; Bryan J. Maedgen & Sheree Lynn McCall, *A Survey of Law Regarding the Liability of Manufacturers and Sellers of Drug Products and Medical Devices*, 18 St. Mary's L.J. 395, 403–405 (1986).

The public has shown a continued willingness to accept the benefits of a particular drug, despite potential side effects, as long as it is suitable for the treatment of specific medical conditions. Society places the ultimate responsibility for the determination of suitability on the physician who prescribes the medication. As a result, the relevant duty in this case did not belong with Burroughs Wellcome.

We overrule Rolen's nine points of error. Because we find that the summary judgment in favor of Burroughs Wellcome was properly granted, we do not reach its crosspoints. We affirm the judgment.