**Beatriz E. EBEL, Plaintiff,**

v.

**ELI LILLY AND COMPANY, Defendant.**

**Civil Action No. B–04–194.**

United States District Court, S.D. Texas, Brownsville Division.

Jan. 29, 2008.

768

770

Andy Vickery, Arnold Anderson Vickery, Vickery, Waldner & Mallia, LLP, Houston, TX, for Plaintiff.

Andrew R. Rogoff, Charles Kocher, Pepper Hamilton LLP, Philadelphia, PA, Gene M. Williams, Kathleen Anne Frazier, Kristi Belt, Shook Hardy & Bacon LLP, Houston, TX, for Defendants.

### *OPINION & ORDER*

HILDA G. TAGLE, District Judge.

BE IT REMEMBERED that on January *29*, 2008, the Court **GRANTED** Defendant Eli Lilly and Company's Motion for Summary Judgment. Dkt. No. 47. Defendant's other motions, Dkt. Nos. 46, 48, 67, are thereby rendered **MOOT**. This Court **VACATED** its opinion and order dated November 14, 2007, 2007 WL 3407422. The Court considered Defendant Eli Lilly and Company's Motion for Summary Judgment, Dkt. No. 47, Plaintiff's

Response and Memorandum in Opposition to Lilly's Motion for Summary Judgment, Dkt. No. 55, Defendant Eli Lilly and Company's Reply Brief in Support of Its Motion for Summary Judgment, Dkt. No. 59, Defendant Eli Lilly and Company's Objections to Plaintiffs' Summary Judgment Evidence, Dkt. Nos. 60, 63, and Plaintiff's Response to Defendant's Objections to Plaintiff's Summary Judgment Evidence, Dkt. No. 66. The Court **GRANTED** Plaintiff's Unopposed Motion to Withdraw Document No. 54, Dkt. No. 57.

## I. Background

Plaintiff Beatriz E. Ebel filed suit against Defendant Eli Lilly and Company on November 9, 2004 alleging that Defendant was liable for the death of decedent, Philip Wayne Ebel. Dkt. No. 1. Defendant is a pharmaceutical company which developed and markets olanzapine, a drug sold as Zyprexa®. *Id.* at 2. Plaintiff alleges that decedent took Zyprexa®, Defendant failed to adequately warn that Zyprexa® could cause suicide or akathisia, and decedent committed suicide because he took Zyprexa®. *Id.* at 5, 7.

Decedent began taking Zyprexa® in July 2002 after Dr. Robert B. Nett prescribed it to him. *Id.* at 7. Defendant does not dispute that decedent took Zyprexa®. On November 9, 2002, a different doctor prescribed decedent Paxil® in addition to Zyprexa®. *Id.* On November 11, 2002, decedent committed suicide. *Id.* Similarly, Defendant does not dispute that decedent was taking Zyprexa® on or around the date he committed suicide.

Plaintiff asserts that Defendant should be liable for decedent's death because Defendant "(a) den[ied] the association between Zyprexa and suicide, (b) refus[ed] to warn about this risk, [and] (c) blam[ed] the deaths on the 'disease' and publicity on trial lawyers, the media, and others."

Dkt. No. 1, at 5–6. Plaintiff states that Defendant further failed to adequately warn of the dangerous "drug-drug interaction between Zyprexa and Paxil." *Id.* at 7–8. Plaintiff sued Defendant based on three causes of action strict liability, negligence, and breach of warranty. *Id.* at 9. Defendant denies that Zyprexa® caused the decedent's death and that Defendant failed to adequately warn of the risks associated with the medication. Dkt. No. 4, at 2–4.

## II. Standard of Review

Summary judgment is appropriate when the movant has established that the pleadings, affidavits, and other evidence available to the Court demonstrate that no genuine issue of material fact exists, and the movant is thus entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Piazza's Seafood World, LLC v. Odom,* 448 F.3d 744, 752 (5th Cir.2006); *Lockett v. Wal–Mart Stores, Inc.,* 337 F.Supp.2d 887, 891 (E.D.Tex.2004). The Court must view all evidence in a light most favorable to the non-moving party. *Piazza's Seafood World, LLC,* 448 F.3d at 752; *Lockett,* 337 F.Supp.2d at 891. However, factual disputes are resolved in favor of the nonmovant "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir.1999).

If the movant satisfies its burden, the non-moving party must then come forward with specific evidence to show that there is a genuine issue of fact. *Lockett,* 337 F.Supp.2d at 891. The nonmovant may not merely rely on conclusory allegations or the pleadings. *Id.; Isquith for and on Behalf of Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th Cir.1988). Rather, the nonmovant must demonstrate

specific facts identifying a genuine issue to be tried in order to avoid summary judgment. FED.R.CIV.P. 56(e); *Piazza's Seafood World, LLC,* 448 F.3d at 752; *Lockett,* 337 F.Supp.2d at 891. Summary judgment should be granted "when the nonmoving party fails to meet its burden to come forward with facts and law demonstrating a basis for recovery that would support a jury verdict." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1071 (5th Cir. 1994).

### III. Learned Intermediary Doctrine

The Texas learned intermediary doctrine applies to all of Plaintiff's claims because they are state law claims based on a manufacturer's failure to warn of potential risks. While the Texas Supreme Court has not applied the learned intermediary doctrine in a products liability case involving prescription medication, it has acknowledged use of the doctrine by Texas appellate courts. *See Humble Sand & Gravel, Inc. v. Gomez,* 146 S.W.3d 170, 185 (Tex.2004) ("[W]e noted that other courts had held that a pharmaceutical manufacturer is not required to warn patients of the dangers of a prescription drug as long as physicians who prescribe the drug— "learned intermediaries"—have been adequately warned."); *Alm v. Aluminum Co. of America,* 717 S.W.2d 588, 591 (Tex.1986) (acknowledging the learned intermediary doctrine in a prescription drug context). *See also Wyeth–Ayerst Laboratories Co. v. Medrano,* 28 S.W.3d 87, 91 (Tex.App.2000) (listing other appellate cases applying the learned intermediary doctrine to prescription drug cases and indicating that "the most common use of this doctrine is in prescription drug cases"). Moreover, the Fifth Circuit has applied the learned intermediary doctrine when applying Texas law to prescription drug cases. *In re Norplant Contraceptive Prods. Liab. Lit.,* 165 F.3d 374, 379 (5th Cir.1999). Therefore,

this Court will similarly apply the learned intermediary doctrine to this case.

 The learned intermediary doctrine is a products liability defense that explains "[p]harmaceutical companies ... [that] sell[ ] prescription drugs are required to warn only the prescribing physician, who acts as a 'learned intermediary' between the manufacturer and consumer." *Reyes v. Wyeth Laboratories,* 498 F.2d 1264, 1276 (5th Cir.1974). In the case of prescription drugs, a patient does not have access to the medication absent a prescription from a physician, therefore a manufacturer need only warn the physician. *In re Norplant Contraceptive Prods. Liab. Lit.,* 165 F.3d at 379. However, where the warning provided to the physician is inadequate or misleading, the manufacturer does not escape liability. *Humble Sand & Gravel, Inc.,* 146 S.W.3d at 198–99. A manufacturer may nonetheless escape liability for an inadequate or misleading warning where the doctor is otherwise informed of the risks of the prescription medication, in spite of an inadequate warning. *Id.* at 199; *Porterfield v. Ethicon, Inc.,* 183 F.3d 464, 468 (5th Cir.1999); *Koenig v. Purdue Pharma Co.,* 435 F.Supp.2d 551, 555–56 (N.D.Tex.2006).

 Essentially, in the context of the defense of the learned intermediary doctrine, Defendant has the initial burden of proving that decedent received the medication through a physician with whom the decedent had a physician-patient relationship and that the warning Defendant provided to the prescribing physician was adequate. In the alternative, Defendant may escape liability with evidence that the prescribing physician was aware of all of the drug's risks that would have been mentioned in an adequate warning. Once Defendant meets its initial burden, Plaintiff must provide some evidence that Defen-

dant's warning was inadequate or misleading, and that the prescribing physician was not otherwise aware of the risks of Zyprexa® when he prescribed it to decedent. Where Defendant meets its burden and Plaintiff fails to rebut with a genuine issue of fact, summary judgment in favor of Defendant may be granted.

### A. Scope of the Doctrine

The learned intermediary doctrine applies to all of Plaintiff's claims against Defendant. Where the crux of the suit is based on a failure to adequately warn, the learned intermediary doctrine may apply to strict liability, negligence, misrepresentation, and breach of warranty claims. *In re Norplant Contraceptive Products Liab. Lit.,* 955 F.Supp. 700, 709 (E.D.Tex.1997), *aff'd* 165 F.3d 374 (5th Cir. 1999). "If the doctrine could be avoided by casting what is essentially a failure to warn claim under a different cause of action ... then the doctrine would be rendered meaningless." *Id.* All of Plaintiff's claims require proof that Defendant's warning was inadequate. *In re Norplant Contraceptive Prod. Liab. Lit.,* 955 F.Supp. at 709; *Gerber v. Hoffmann–La Roche Inc.,* 392 F.Supp.2d 907, 914 (S.D.Tex.2005) (citing *Lucas v. Tex. Indus., Inc.,* 696 S.W.2d 372, 377 (Tex.1984)); *Morgan v. Wal–Mart Stores, Inc.,* 30 S.W.3d 455, 461 (Tex.App.2000). Therefore, the learned intermediary doctrine applies to all of Plaintiff's claims. *In re Norplant Contraceptive Prod. Liab. Lit.,* 955 F.Supp. at 709.

It is undisputed that decedent and Dr. Nett [1] had a physician-patient relationship at the time Dr. Nett prescribed decedent Zyprexa®. Dkt. No. 1, at 7; Dkt. No. 47, at 5; Dkt. No. 55, at 3. Defendant argues that summary judgment is appropriate because the 2002 warning label for Zyprexa® is presumptively adequate and Dr. Nett testified that he was aware of all of the risks Plaintiff complains of even if Defendant did not adequately warn of risks. Dkt. No. 47, at 7, 10. Moreover, Defendant asserts that Plaintiff has failed to raise a genuine issue of material fact as to its defense. Dkt. No. 64, at 1–5.

### B. Adequate Warning for Zyprexa®

The learned intermediary doctrine disposes of Plaintiff's claims as they relate to the failure to warn of any suicidal risk of Zyprexa®. The doctrine does not require that manufacturers adequately warn patients taking the manufactured medication as long as the manufacturer adequately warned the prescribing physician of the medication's potential risks. *Porterfield,* 183 F.3d at 467–68.

#### 1. Presumption of Adequacy from FDA approval

Defendant asserts that the warning provided for Zyprexa® was adequate. Dkt. No. 46, at 6. In support, Defendant provided evidence that the United States Food and Drug Administration, ("FDA"), approved Defendant's warning labels for Zyprexa® in 2002. Dkt. No. 46, Ex. A. Plaintiff concedes that Defendant's 2002

---

1. Plaintiff impliedly challenges the application of the learned intermediary doctrine to Defendant because Dr. Nett, decedent's prescribing physician, collaborated with decedent's previous physician when Dr. Nett decided to prescribe decedent Zyprexa®. Dkt. No. 55, at 1, 10. However, Dr. Nett was the prescribing physician and the physician who Defendant was required to inform of the risks of Zyprexa®. *See In re Norplant Contraceptive Prod. Liab. Lit.,* 955 F.Supp. 700, 706 (E.D.Tex.1997), *aff'd* 165 F.3d 374 (5th Cir. 1999) (indicating that if a physician becomes a mere conduit of information and fails to make an independent decision complete with an individualized risk and benefit analysis the manufacturer is not liable for the physician's poor judgment).

label was approved by the FDA. Dkt. No. 55, at 13. Under Texas law, that FDA approval creates a rebuttable presumption that the approved warning is adequate. TEX. CIV. PRAC. & REM.CODE ANN. § 82.007(a). *See Holland v. Hoffman–La Roche, Inc.*, slip op., 2007 WL 4042757, at *2 (N.D.Tex.2007). Section 82.007(a) provides,

> In a products liability action alleging that an injury was caused by a failure to provide **adequate warnings or information** with regard to a pharmaceutical product, there is a rebuttable presumption that the defendant ... manufacturer ... [is] not liable ... if (1) **the warnings or information** that accompanied the product in its distribution were those approved by the United States Food and Drug Administration....

TEX. CIV. PRAC. & REM.CODE ANN. § 82.007(a) (emphasis added).

Nonetheless, Plaintiff argues that this presumption is not applicable here because "the 2002 label did not include *any warning whatsoever* about a risk of akathisia[2] or suicidality." *Id.* (citing Dkt. No. 55, Ex. 4) (emphasis added). *See also* Dkt. No. 55, at 2 (citing Dkt. No. 55, Ex. 4); *id.* at 21 (indicating that this is a case where the drug label provided no warning or information cautioning the risk of suicide and distinguishing this case from a case of inadequate warnings where the label does not adequately communicate the extent of the risk). Plaintiff asserts that because Defendant did not attempt to demonstrate that it provided an adequate warning, the presumption should not apply. *Id.* at 14 (relying upon a case from the district of Wyoming which did not involve a statutory presumption of adequacy from FDA approval).

However, the 2002 label for Zyprexa® did contain information about akathisia and suicide. Dkt. No. 55, Ex. 4 at 2–3. The 2002 label mentions akathisia multiple times. *Id.* at 3. Five separate charts delineate results from various clinical trials of olanzapine, marketed as Zyprexa®. *Id.* In four of the charts, akathisia is mentioned and reported has having a higher rate of occurrence among participants taking olanzapine than among participants taking the placebo. *Id.* The 2002 label also mentions an association with suicide. On the second page of the FDA approved label, in the first column and under the bold heading, "**PRECAUTIONS,**" the label states, "*Suicide*—The possibility of a suicide attempt is inherent in schizophrenia and in bipolar disorder, and close supervision of high-risk patients should accompany drug therapy." *Id.* (emphasis in original). On the third page, under the subheading, "*Other Adverse Events Observed During the Clinical Trial Evaluation of Olanzapine*," the 2002 label indicates frequent events which affected the body as a whole include, "dental pain, flu syndrome, intentional injury, and *suicide attempt.*" *Id.* at 3 (emphasis added). Therefore, this is not a "no warning" case because the risks Plaintiff complains of are mentioned in the label. *See McNeil v. Wyeth*, 462 F.3d 364, 368 (5th Cir.2006) ("[W]hen 'a warning specifically *mentions* the circumstances complained of, the warning is adequate as a matter of law.'") (quoting *Rolen v. Burroughs Wellcome Co.*, 856 S.W.2d 607, 609 (Tex.App.1993)) (emphasis added).

Plaintiff cites *McNeil* in support of her challenge to the application of the presumption. Dkt. No. 55, at 16. However, the plaintiff in *McNeil* alleged a different problem with the label; the plaintiff al-

---

**2.** Akathisia is a condition sometimes referred to as restlessness. Dkt. No. 55, at 12 n. 22; Dkt. No. 55, Ex. 5 at 81:20, 82:16. Moreover, akathisia can be a precursor to suicide. *See* Dkt. No. 47, Ex. B at 129:13; Dkt. No. 55, at 11–12.

leged that the label was inadequate because it was "misleading as to the risk level for developing the condition." *McNeil*, 462 F.3d at 368. The label mentioned the risk, but the plaintiff alleged that it downgraded the risk such that a reasonable physician might have been induced to undertake the risk. *Id.*

Plaintiff did not raise such a challenge to the 2002 label for Zyprexa®. Rather she repeatedly asserts that this is a "no warning" case. *See* Dkt. No. 55, at 13, 17, 19–20, 21. The Court finds that the 2002 label for Zyprexa® does mention akathisia and suicide, the risks of which Plaintiff complains. Therefore, the § 82.007(a) presumption applies.

Plaintiff further argues that because Defendant failed to assert that it did warn about the risks of Zyprexa®—induced suicidality this Court should not apply the presumption. Dkt. No. 55, at 7 n. 17 ("Lilly does not even argue that it has warned *doctors* about the risks of Zyprexa-induced suicidality.... [T]hat failure is also fatal to its motion.") (emphasis in original). However, Plaintiff does not distinguish this argument from her "no warning" argument against the application of the presumption in this case. Defendant asserted that the label was adequate through its argument that the § 82.007(a) presumption applied. Dkt. No. 47, at 8. And, "[w]hen a presumption arises, it shifts the burden of producing evidence to the party against whom the presumption operates." *Ackermann v. Wyeth Pharmaceuticals*, 471 F.Supp.2d 739, 749 (E.D.Tex.2006) (citing *Gen. Motors Corp. v. Saenz*, 873 S.W.2d 353, 359 (Tex.1993)). As Plaintiff has not met her burden of rebutting the presumption, Defendant need not provide further evidence that the label is adequate. *See Rolen*, 856 S.W.2d at 609.

## 2. Exception[3] to the § 82.007(a) Presumption

██ Plaintiff alleges that if the TEX. CIV. PRAC. & REM.CODE ANN. § 82.007(a) applies, so do its exceptions. Plaintiff asserts that the exception of overpromotion, TEX. CIV. PRAC. & REM.CODE ANN. § 82.007(b)(3), defeats the presumption. Dkt. No. 55, at 18–19.

██ Overpromotion can include promotion of illegal off-label use,[4] or promoting a use of a drug not approved by the FDA. Salbu, *Off–Label Use*, 51 FLA. L.REV. at 188 ("Off-label use of a prescription drug occurs whenever the consumer of the drug uses it in a manner that varies in some way from the instructions in the drug's labeling, which are limited to FDA-approved uses."). Plaintiff asserts that her exhibit 8 at ZY1 00041186 demonstrates that Defendant had a "marketing plan to 'exploit' the off label use of Zyprexa to treat migraines in the Primary Care market," Dkt. No. 55, at 8 n. 18, and that the exhibit is ample evidence to cause

---

3. Both Defendant and Plaintiff debate the legal status of exception (b)(2) concerning fraud on or withholding information from the FDA. Dkt. No. 47, at 10–14; Dkt. No. 55, at 19, 21–24; Dkt. No. 64, at 12–13. However, Plaintiff has provided no evidence of fraud on the FDA or that Defendant withheld information from the FDA. *See* Dkt. No. 55, at 19, 23–24. Therefore, the only exception to § 82.007(a) that this Court may consider is overpromotion, TEX. CIV. PRAC. & REM.CODE ANN. § 82.007(b)(3).

4. It is illegal for a manufacturer to promote off-label use of a drug; however, it is not illegal for a physician to prescribe the drug for an off-label use. *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 351 n. 5, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001); Steven R. Salbu, *Off–Label Use, Prescription, and Marketing of FDA–Approved Drugs: An Assessment of Legislative and Regulatory Policy*, 51 FLA. L.REV. 181, 190 (April 1999) [hereinafter "Salbu, *Off–Label Use* "].

the § 82.007(a) presumption to disappear. *See id.* at 10, 21. However, this Court disagrees. While *Ackermann* establishes that the presumption is rebutted after Plaintiff presents "some evidence" contradicting the presumption, 471 F.Supp.2d at 749–50, Plaintiff's evidence does not satisfy that burden.

█ Plaintiff's argument of overpromotion is based on poorly drawn inferences. She reasons that although Zyprexa® is indicated for only two disorders, Defendant makes billions of dollars in annual sales from the drug. Dkt. No. 55, at 8. Therefore, Plaintiff reasons that Defendant must have overpromoted Zyprexa®. *Id.* Plaintiff offers no data or even a citation to support these conclusions. *Id.* Plaintiff's evidence of Defendant's overpromotion consists of three articles that Plaintiff submits are from The New York Times. *Id.* (citing to internet print outs without web addresses or headings which would indicate from what source the article was retrieved). However, these articles riddled with hearsay, whether from The New York Times or not, are inadmissible evidence that will not be considered. Fed.R.Civ.P. 56(e); Fed.R.Evid. 802.

Plaintiff indicates that the key evidence of overpromotion is her exhibit 8 at ZY1 00041186. Dkt. No. 55, at 8, 10, 21. Plaintiff maintains that "although there are a number of documents, and other evidence, which attest to [the overpromotion], one page from one document is sufficient evidence to defeat summary judgment under these pretenses." *Id.* at 9–10 (citing Dkt. No. 55, Ex. 8 at ZY1 00041186). *See id.* at 8 n. 18 ("[B]ecause Lilly has not alleged that there is no evidence of overpromotion, and, thus, has not met its 'initial burden' under *Celotex [Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ] to put that allegation into issue, we will not burden the Court at this juncture with too much evidence. Exhibit 8 at ZY1 00041186 is direct evidence of Lilly's marketing plan to 'exploit' the off label use of Zyprexa to treat migraines in the Primary Care market.").

█ First, there is a concern with the admissibility of this document, which Plaintiff admits was obtained from a website, www.joysoup.net. *See* Fed.R.Evid. 901 (requiring authentication prior to an admissibility analysis). It appears that this document was not provided by Defendant during discovery. There was no motion to compel production of this document or any other motion indicating Defendant possessed this document and withheld it from Plaintiff during the discovery process. Plaintiff fails to provide any information which would establish that this exhibit is in fact an internal document created by Defendant. The document does have labeling down the side indicating that it may have been included among evidence submitted as part of the Zyprexa® Multi–District Litigation suit. Dkt. No. 55, Ex. 8 at ZY1 00041186. Such a marking does not authenticate the document. However, while Defendant challenged the admission of this document, the challenge was general and lacked any legal authority. Dkt. No. 63, at 1 ("Exhibit No. 8—Eli Lilly and Company objects to this document as it contains hearsay within hearsay, is incomplete and irrelevant, and plaintiffs have not laid a proper foundation for admissibility."). Absent a more specific objection, this Court will not grant Defendant's motion to strike this exhibit.

Second, even if this Court were to consider exhibit 8 at ZY1 00041186, it is still not the smoking gun that Plaintiff declares it to be. At the top right of the document is the label "EXAMPLE," set apart from the rest of the document with lines above and below it. Dkt. No. 55, Ex. 8 at ZY1 00041186. Moreover, the heading in bold

states that the document contains, *"PO-TENTIAL* ACTIONS TO EXPLOIT [PRIMARY CARE PHYSICIANS'] PO-TENTIAL FOR ZYPREXA." *Id.* (emphasis added). The document organizes information in three columns and five rows. *Id.* Plaintiff argues that the text in the third column, under the heading "Additional ideas," and in the row labeled "Clinical profile," indicates that Defendant had a marketing plan to persuade physicians to prescribe Zyprexa® off-label. Dkt. No. 55, at 8 n. 18. The text is as follows, "[w]hat could be other more primary care focused indications or uses of Zyprexa (e.g., behavioral disorders in the elderly, migraines)?" Dkt. No. 55, Ex. 8 at ZY1 00041186. The words "example," "potential," and "ideas" as well as the *question* inquiring as to the viability of the drug for other indications, *id.,* fail to support Plaintiff's claim that Defendant adopted and implemented a marketing plan which attempted to persuade physicians to use Zyprexa® off-label.

Plaintiff reasons that assertions by Defendant's officials support her allegation of overpromotion. Plaintiff points to the deposition of the previous Executive Director of Global Marketing for Zyprexa® in which he confirms that promoting Zyprexa® for treatment of headaches would be illegal. Dkt. No. 55, at 9. Plaintiff also provides an excerpt of the deposition of the Brand Leader for Zyprexa® which includes a statement acknowledging that it would be inappropriate to train sales representatives to promote Zyprexa® off-label. *Id.* Plaintiff argues that these statements further substantiate her allegation that Defendant overpromoted Zyprexa®.

*Id.* Neither statement provides this Court with evidence of an alleged marketing plan to overpromote Zyprexa®.

■■■ Furthermore, to establish the exception of overpromotion, Plaintiff must not only provide some evidence of a marketing plan to promote the off-label use of Zyprexa®, she must also provide proof that the marketing plan actually reached the prescribing physician, Dr. Nett. *In re Norplant Contraceptive Prod. Liab. Lit.,* 1997 WL 81092, at *1 (E.D.Tex.1997) (holding that evidence of a marketing plan to overpromote a drug is irrelevant where there is no accompanying evidence the marketing plan reached and effected the prescribing physician); *Sita v. Danek Medical, Inc.,* 43 F.Supp.2d 245, 263 (E.D.N.Y.1999) ("To prevail, plaintiff must establish that [the prescribing physician] was influenced by the illegal marketing efforts.").

Plaintiff has not offered any evidence to establish that Dr. Nett was influenced by the alleged overpromotion marketing scheme. Plaintiff only points to the estimation of Defendant's employee in her deposition that "maybe 30 to 40 percent" of the uses of Zyprexa® are off-label as evidence of the implementation of an illegal marketing scheme. Dkt. No. 55, at 10 (citing Dkt. No. 55, Ex. 7 at 136:6–15). Plaintiff has not met her burden. Therefore, Defendant's 2002 label for Zyprexa® is presumed adequate.

### 3. Read and Heed Presumption

■■■ Plaintiff also attempts to rebut the § 82.007(a) presumption with the heeding presumption.[5] Dkt. No. 55, at 16–18.

---

**5.** The Texas Supreme Court in *Technical Chem. Co. v. Jacobs,* held that when a manufacturer of a product fails to provide an adequate warning, there is a rebuttable presumption that the consumer of that product would have read and heeded the adequate warning or instruction. 480 S.W.2d 602, 606 (Tex. 1972). The presumption is rebutted by evidence that the consumer was blind, illiterate, intoxicated while using the product, lax in judgment, or affected in someway as to dem-

Plaintiff cites three Texas cases which applied the read and heed presumption in support of her claim, *Technical Chem. Co.*, 480 S.W.2d at 606, *Magro v. Ragsdale Bros.*, 721 S.W.2d 832, 834 (Tex.1986), and *Dresser Indus. v. Lee*, 880 S.W.2d 750, 753 (Tex.1993). However, none of those cases involved prescription drugs prescribed to a patient by a physician. *Technical Chem. Co.*, 480 S.W.2d at 605; *Magro*, 721 S.W.2d at 833; *Dresser Indus.*, 880 S.W.2d at 752. In fact, a federal district court has already reasoned that the Texas Supreme Court would not apply the read and heed presumption in the prescription drug context. *Koenig*, 435 F.Supp.2d at 556–57. *Compare Anderson v. Sandoz Pharmaceuticals Corp.*, 77 F.Supp.2d 804, 809 (S.D.Tex. 1999) (applying the read and heed presumption in a prescription drug case as an alternative in one sentence and without reasoning to bolster a finding that the physician was not adequately apprized of the risks of the drug).

The court in *Koenig* reasoned that the Texas Supreme Court would not apply the read and heed presumption in a prescription drug case because such an application would be inconsistent with the Texas Supreme Court's rationale behind the presumption. 435 F.Supp.2d at 556. The court explained that neither Texas courts nor the Fifth Circuit have applied the read and heed presumption to prescription drug cases; "[i]n th[ose] cases, the plaintiff, not the defendant, bore the burden of production as to causation." *Id.* Moreover, the Texas Supreme Court explained that the purpose of the read and heed presumption was, "(1) to excuse plaintiffs from having to make self-serving assertions that they would have followed adequate instructions, and (2) to assist plaintiffs in cases where the person to whom the warnings are directed has died, and evidence … is un-

available." *General Motors Corp. v. Saenz*, 873 S.W.2d 353, 359 (Tex.1993). The court in *Koenig* reasoned that, "[n]either of these factors are relevant in a case involving a learned intermediary because it is the physician, not the plaintiff, who testifies about his decision to prescribe the product." 435 F.Supp.2d at 557. This Court is persuaded by the reasoning of *Koenig* and shall not apply the read and heed presumption in this case.

### C. Physician Informed of Risks, Irrespective of Source

▮▮▮ In order to survive summary judgment based on the learned intermediary doctrine, Plaintiff must respond to Defendant's motion with evidence that (1) Defendant's warning label for Zyprexa® was inadequate, *and* (2) with an adequate warning Dr. Nett would not have prescribed Zyprexa®. *Koenig*, 435 F.Supp.2d at 555. Even if Defendant's label were not presumed adequate, Plaintiff still succumbs to summary judgment as Dr. Nett's deposition indicates that he knew of the very risks associated with Zyprexa® of which Plaintiff complains.

As an alternative argument, Defendant asserts that even if Defendant's warning was inadequate, it was not the proximate cause of decedent's injury because the prescribing physician, Dr. Nett, was aware of the risks. Plaintiff asserts that had Dr. Nett received an adequate warning he would have dealt with Zyprexa® differently, and may not have prescribed it at all. Dkt. No. 55, at 14. Plaintiff further states that Defendant has not met its burden of proof that Dr. Nett, at the time of the prescription, knew of all the risks an adequate warning would have provided. *Id.* Plaintiff argues,

onstrate that improper use would have oc-

curred despite an adequate warning. *Id.*

Dr. Nett does say that he was aware of a low risk of 'akathisia,' but there is nothing to indicate that he recognizes that to be a precursor of suicidality. . . . Moreover, Dr. Nett subsequently testified that, to know the side effect profile, 'I would have to get a PDR.'

*Id.* at 3 (citing Dkt. No. 47, Ex. B at 81–83, 120). *Compare* Dkt. No. 47, Ex. B at 120, *infra* (completing Dr. Nett's sentence after he was interrupted by the attorney conducting the deposition). This Court finds this depiction of Dr. Nett's deposition testimony to be grossly misleading. Provided below are brief excerpts of Dr. Nett's deposition.

Q . . . [D]o you remember this class of antipsychotic medications can cause some restlessness, or what's sometimes called akathisia?

A Yes.

Q And at the time you prescribed that for him, you were aware of that?

A Yes. Akathisia is fairly rare as far as, you know, fullblown. But it's the irritability. . . . I described it as you might get irritable as though you had two extra cups of coffee and you're kind of jumpy a little bit. And I wanted him to report that.

Dkt. No. 47, Ex. B at 81–82.

Q . . . [Y]ou know, Zyprexa is known as an atypical psychotic?

A Yes.

. . .

Q What about restlessness, or akathisia, do the atypicals have that same possibility of a rare side effect?

A It—it does.

*Id.* at 82.

Q In July of 2002 when you prescribed [Zyprexa], what did you know about the side effect profile of Zyprexa? And if you'd give me some specifics, you know, what it caused—

A It can cause—

Q —frequency of cause—of what it caused.

A I mean, I would have to get a PDR to be exact—

Q Sure.

A —to the amount of sedation. But sedation, lightheadedness, dizziness, moodiness, irritability, agitation, can be easily observed with this product. . . . And [decedent] was to report any rage, violent anger, intrusive thoughts.

*Id.* at 120.

Q . . . Had anyone from Eli Lilly ever discussed with you the potential for Zyprexa induced suicides, or suicidality?

A I believe that's been brought up. . . .

Q . . . [W]e really need to focus on 2002

A Yeah, I mean, I am reasonably sure that such dialogue had occurred.

. . .

A I'm aware of akathisia enhanced suicides if I'm going to prescribe a product. . . . Because of enhanced concerns for side effects, including suicide, risk benefit in [decedent] at that time was valuable to try [sic].

. . .

A He would have been told, as illustrated in chart notes, concerns for irritability and agitation that go beyond that. He was asked specifically for depression, suicidal thoughts, intrusive thoughts—

*Id.* at 128–29.

Dr. Nett's testimony establishes that he was aware that patients who take Zyprexa® could develop akathisia, akathisia may be a precursor to suicide, and suicidal thoughts may be a risk for patients taking Zyprexa®. These are the very risks of which Plaintiff argues that Defendant

failed to adequately warn. *See* Dkt. No. 55, at 13.

Similarly, in *Koenig,* a district court was persuaded that the prescribing physician was adequately aware of the risks associated with the medication because in his deposition the physician testified that he was aware of the risks the plaintiff complained of. 435 F.Supp.2d at 555. However, the court was also persuaded that an alleged inadequate warning did not cause plaintiff's injury because the physician testified that none of the additional information provided to him after he prescribed the medication would have changed his mind. *Id.*

The district court in *Norplant* likewise held that where the physicians were unequivocal that new information about the risks would not have changed their decision to prescribe the medication, an inadequate warning was not the proximate cause of plaintiff's injury. 955 F.Supp. at 710–11. The court went further to explain that where a physician testifies that he was aware of the risks of which plaintiff complains, it is then the plaintiff's burden to prove that a different warning would have changed the physician's decision to prescribe the medication. *Id.* at 711.

To contrast, in *Anderson,* a district court found that a drug label that did not adequately warn the prescribing physician of the medication's risks was the proximate cause of the plaintiff's injury. 77 F.Supp.2d at 808. While the prescribing physician testified that he did believe that he had ample knowledge about the risks associated with the drug, he also conceded that he had no knowledge of a variety of studies which linked the drug and the injury plaintiff suffered. *Id.* at 808–09. The court then reasoned that the physician was not "in a position to fully appreciate [the drug's] risks." *Id.* at 809.

While Dr. Nett did not explicitly state that even with recent evidence about the risks of Zyprexa® he would have nonetheless prescribed it to decedent, he did state that he knew of all of the risks at the time he wrote the prescription. Moreover, unlike in *Anderson,* there is no evidence that Dr. Nett was unaware of studies out at the time he prescribed Zyprexa® which linked the drug to akathisia or suicide attempts. Rather Dr. Nett indicated that he was aware that Zyprexa® could cause akathisia in some patients and that akathisia could cause suicidal thoughts. Dkt. No. 47, Ex. B at 82, 128–29. In fact, Dr. Nett further pointed to evidence that he knew of this risks when he prescribed Zyprexa® for decedent when he indicated that decedent was asked to report "depression, suicidal thoughts, intrusive thoughts." *Id.* at 128–29. Plaintiff has not provided this Court with evidence that Dr. Nett would have not prescribed Zyprexa® had Defendant provided him with an alternate warning label. Therefore, even if the Zyprexa® warning label was inadequate, it was not the proximate cause of decedent's death as Dr. Nett was informed about the risks of Zyprexa®.

### D. Adequate Warning for Mixing Zyprexa® with other drugs

 To the extent that Plaintiff's complaint may be construed to contain another cause of action for failure to warn of risks associated with "polypharmacy," the claim similarly succumbs to summary judgment. There is no summary judgment evidence that Dr. Nett knew of any potential risk if a patient were prescribed Zyprexa® and Paxil®. Summary judgment is appropriate because there exists no genuine issue of material fact as to whether the warning provided was adequate.

As explained above, the FDA approved the warning labels Defendant provided for

Zyprexa®. Dkt. No. 46, Ex. A. Therefore, this Court may presume that the warning was adequate. Tex. Civ. Prac. & Rem.Code Ann. § 82.007(a). It was Plaintiff's burden to demonstrate a genuine issue of material fact and provide evidence which would rebut the presumption. *Id.*; *Ackermann,* 471 F.Supp.2d at 749. Plaintiff did not. Plaintiff asserted that Defendant failed to warn against mixing Zyprexa® with Paxil®; again, arguing that this is a "no warning" case as opposed to an inadequate warning case. Dkt. No. 55, at 15, 16.

However, exhibit 4, provided to this Court by Plaintiff and identified as the label for Zyprexa® in 2002, does warn against prescribing olanzapine with other drugs. Dkt. No. 55, Ex. 4 at 2. It warns physicians that they should discuss with their patients, *"Drug Interactions—...* Given the primary [Central Nervous System] effects of olanzapine, caution should be used when olanzapine is taken in combination with other centrally acting drugs...."* Moreover, this Court takes judicial notice that Paxil® is a centrally acting drug. *See* Paxil®, Prescribing Info., *available at* http://www.fda.gov/Medwatch/SAFETY/2006/Paxil_PI.pdf, at 3:84.

Defendant merely asserts that its label is adequate and argues that FDA approval warrants a presumption that the label is adequate. The report of Plaintiff's expert witness, Dr. Healy, provides no evidence that the warning label is inadequate. It states only,

> As early as 1991, in an article by Montgomery et al these authors noted that the addition of Prozac to an antipsychotic could exacerbate extrapyramidal problems and cautioned that the possibility of such hazards need to be borne in mind when these groups of drugs were combined. [citation omitted] It has remained *clinical wisdom* ever since that the risk of extrapyramidal problems including akathisia is increased by combinations of an SSRI and an antipsychotic.

Dkt. No. 35, Ex. 1 at 23 (emphasis added). This statement about "clinical wisdom" alone does not defeat the statutory presumption that the Zyprexa® warning label is adequate.

## IV. Exceptions to the Learned Intermediary Doctrine

██ Plaintiff argues that if this Court postulates that the Texas Supreme Court would adopt the learned intermediary doctrine, it follows that the Texas Supreme Court would similarly adopt exceptions to the doctrine recognized by other jurisdictions. Dkt. No. 55, at 7. Plaintiff correctly indicates that Defendant has the burden of carrying the affirmative defense of the learned intermediary doctrine; however, should this Court also apply the exceptions to this case, the burden shifts to Plaintiff.

### A. Overpromotion of Zyprexa

Plaintiff argues that Texas law will incorporate the exception for overpromotion to the learned intermediary doctrine. Dkt. No. 55, at 6. However, as discussed above, this Court finds that Plaintiff has not provided evidence to establish overpromotion. Therefore, this Court will not opine whether Texas courts would adopt the exception of overpromotion to the learned intermediary doctrine.

### B. Use of Mass Media to Promote Zyprexa

██ Plaintiff asserts that the mass media exception bars application of the learned intermediary doctrine to this case. Dkt. No. 55, at 11. First, Plaintiff provided no evidence of Defendant's mass media distribution of information in 2002. Second, this Court does not predict that the Texas Supreme Court would adopt that

exception to the learned intermediary doctrine.

Plaintiff alleges that Defendant used the mass media, i.e., a website, to promote Zyprexa® in 2002. Dkt. No. 55, at 11. However, Plaintiff provided this Court with the 2007 website. *Id.*, Ex. 10. Plaintiff merely states, "[t]his website was up and running at the time [decedent] received his Zyprexa prescription." Dkt. No. 55, at 11. Plaintiff offered no evidence from depositions, interrogatories, or documents received from Defendant during discovery which would substantiate this allegation.

Moreover, Plaintiff asserts that "there was, and is, no warning whatsoever on . . . the website . . . about any link with suicidality or its precursor conditions like akathisia. *Id.* at 11–12. However, this Court examined exhibit 10 and on the portion of the website marked, "Important Safety Information for Olanzapine," Defendant states that in a six week clinical trial of olanzapine, five percent of participants taking the drug reported experiencing akathisia as compared with only one percent of the participants who took the placebo. *Id.* at 7. Furthermore, on the portion of the website marked, "Important Safety Information about Zyprexa® (olanzapine)," Defendant warned, "[t]he symptoms of bipolar disorder or schizophrenia may include **thoughts of suicide** or of hurting yourself or others. If you have these thoughts, tell your doctor or go to an emergency center immediately." *Id.* at 10 (emphasis in original).

The Fifth Circuit has already predicted that the Texas Supreme Court would not adopt mass marketing as an exception to the learned intermediary doctrine. *In re Norplant Contraceptive Prod. Liab. Lit.*, 165 F.3d at 379. The Court, looking to Texas appellate court cases, declared, "as long as a physician-patient relationship ex-

ists, the learned intermediary doctrine applies." *Id.* Furthermore, Plaintiff failed to cite any legal authority to persuade this Court that the Texas Supreme Court would adopt the exception. *See* Dkt. No. 55, at 11–13.

In *Norplant*, the plaintiffs accused the defendant of engaging in " 'aggressive' marketing." 165 F.3d at 379. The Circuit Court found the facts unpersuasive. *Id.* The Court reasoned that the use of mass media could not subject a manufacturer to liability where the plaintiffs failed to provide evidence that they "actually saw, let alone relied, on any marketing materials [distributed to the patients]." *Id.*

Similarly, in this case, Plaintiff admits that there is no evidence that the decedent saw Defendant's website. Dkt. No. 55, at 12. Therefore, even if this Court were to predict that the Texas Supreme Court would adopt the exception to the learned intermediary doctrine for the use of mass media, which it does not, Plaintiff has nonetheless failed to present evidence to warrant application of the exception.

## V. Conclusion

Summary judgment is appropriate as the learned intermediary doctrine properly applies to this case and shields Defendant from liability. Plaintiff failed to raise a genuine issue of material fact as to the doctrine or any exception to the doctrine. The Court therefore **GRANTS** Defendant Eli Lilly and Company's Motion for Summary Judgment. Dkt. No. 47. This Court **VACATES** its opinion and order dated November 14, 2007. Defendant's other motions, Dkt. Nos. 46, 48, 67, are rendered **MOOT.** The Court **DISMISSES WITH PREJUDICE** all of Plaintiff's claims against Defendant. The Court further in-

structs the District Clerk to close this case.